# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Financial Institution Products Corp., *et al.*,<br><br>        Plaintiffs,<br><br>  vs.<br><br>LOS Global Systems, LLC, *et al.*,<br><br>        Defendants. | 2:16-cv-00283 JWS<br><br>**ORDER AND OPINION**<br><br>**[Re: Motion at Docket 23]** |

## I.  MOTION PRESENTED

At docket 23, defendants LOS Global Systems, LLC, John Bulavinetz Michael ("J. Michael"), and Deborah Bulavinetz Michael ("D. Michael") (collectively, "Defendants") move pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) for an order dismissing the plaintiffs' first amended complaint.  Plaintiffs Financial Institution Products Corporation ("FIPCO") and American Bank Systems Incorporated ("ABS") (collectively, "Plaintiffs") respond at docket 28.  Defendants reply at docket 30.  Oral argument was requested, but would not assist the court.

## II.  BACKGROUND

According to the First Amended Complaint, J. Michael owns LOS Global, a company that owns a loan operating system ("LOS") known as "LOS Plus Solutions

Software" ("the Software").  The Software allows financial institutions to "create loan and deposit transaction documents for loan and deposit customers."

FIPCO and ABS went into business with LOS Global in 2011 under the name "eGlobal Systems.us, llc" ("eGlobal").  FIPCO and ABS paid LOS Global "in excess of $75,000" to acquire their membership interests in eGlobal.  eGlobal's operating agreement ("Operating Agreement") states that LOS Global would convey the Software in its entirety to eGlobal, and eGlobal's principal purpose is to develop, maintain, and market the Software to financial institutions and other users.

The Software cannot be used for its intended purpose without loan and deposit forms.  eGlobal does not own its own proprietary forms, but FIPCO and ABS do. FIPCO and ABS entered into separate license agreements ("License Agreements") with eGlobal that grant FIPCO and ABS licenses to integrate the Software with each company's respective proprietary forms ("Integrated Software") and then sublicense the Integrated Software to financial institutions.  Although the License Agreements provide that eGlobal must give FIPCO and ABS a copy of the Software's source code, LOS Global has refused to share the source code with eGlobal, ABS, or FIPCO.

Plaintiffs sued LOS Global in January 2016, claiming, among other things, that LOS Gloabal is liable for conversion, bad faith, and intentional interference with contract.  Plaintiffs' original complaint also seeks a declaratory judgment and injunction requiring LOS Global to provide them with the source code (collectively, "the source code claims").  The First Amended Complaint adds J. Michael and D. Michael as defendants and adds new claims for fraudulent inducement and negligent misrepresentation ("the misrepresentation claims"), as well as an alternative source code claim: unjust enrichment.

Plaintiffs' new misrepresentation claims allege that J. Michael was not who he said he was during the transactions described above.  Although his legal name at the

time was "John Michael Bulavinetz," he identified himself as "John Michael."[1] Plaintiffs contend that if they had known J. Michael's legal name they would have discovered that they were dealing with someone who had been sued by the State of Arizona for fraud and misappropriation, had filed for bankruptcy, and had been referenced in an Arizona banking examination. As a result, Plaintiffs allege that they would not have entered into a business relationship with LOS Global or J. Michael.

### III.  STANDARDS OF REVIEW

**A.     Rule 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. In order to survive a defendant's motion to dismiss, the plaintiff has the burden of proving jurisdiction.[2]

There are two types of Rule 12(b)(1) jurisdictional attacks: facial and factual.[3] "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[4]

Where the defendant brings a facial attack, the court assumes the factual allegations in the plaintiff's complaint are true and draws all reasonable inferences in the plaintiff's favor.[5] The court does not accept the truth of legal conclusions cast in the form of factual allegations, however.[6]

---

[1] J. Michael changed his legal name to John Bulavinetz Michael in 2015.

[2] *Tosco v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000).

[3] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[4] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[5] *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

[6] *Id.*

Where the defendant brings a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."[7]  "It also need not presume the truthfulness of the plaintiffs' allegations."[8]  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."[9]

**B.    Rule 12(b)(6)**

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[10]  To be assumed true, the allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[11]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[12]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[13]

---

[7] *Meyer*, 373 F.3d at 1039.

[8] *White*, 227 F.3d at 1242 (citations omitted).

[9] *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

[10] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[11] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[12] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[13] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[14] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[16] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[17] "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[18]

Ordinarily, if "matters out side the pleadings are presented to and not excluded by the court," a Rule 12(b)(6) motion "must be treated as one for summary judgment under Rule 56," and the parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion."[19] There are two exceptions to this rule, however. "First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a

---

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[15] *Id.*

[16] *Id.* (citing *Twombly*, 550 U.S. at 556).

[17] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[18] *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

[19] Fed. R. Civ. P. 12(d).

motion for summary judgment."[20]  Second, "a court may take judicial notice of 'matters of public record.'"[21]

## IV.  DISCUSSION

**A.  The Amount in Controversy**

The First Amended Complaint alleges that this court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.[22]  Defendants bring a factual jurisdictional attack to this claim under Rule 12(b)(1); they dispute the truth of the Plaintiffs' allegation that they have suffered any damages, let alone $75,000 worth.

Defendants' first attack is directed at Plaintiffs' source code claims.[23]  According to Defendants, Plaintiffs are successfully selling sublicenses of the Software to their customers, and they cannot show that not having the source code has harmed or will harm them in any way.  Plaintiffs respond by submitting the declarations of FIPCO's President, Pamela Kelly ("Kelly"), and ABS's Chief Executive Officer, James Bruce ("Bruce").  Because the court concludes that Plaintiffs have met their burden of proof, there is no need to consider Defendants' other attacks.

A plaintiff ordinarily satisfies her burden of establishing the amount in controversy simply by requesting sufficient damages in her complaint.[24]  In such cases, the court will accept the plaintiff's good faith allegation that she is seeking more than the statutory minimum, unless it appears to a "legal certainty" that she cannot.[25]  But

---

[20]*City of Los Angeles*, 250 F.3d at 688 (internal quotation omitted).

[21]*Id.* at 688-89 (quoting Fed. R. Evid. 201).

[22]Doc. 17 at 2 ¶ 6.

[23]Doc. 23 at 10.

[24]*Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000); *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986).

[25]*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

where the defendant challenges the amount in controversy pled in the complaint, the plaintiff must submit competent proof that justifies her allegations.[26]  Competent proof can come in the form of facts alleged in the complaint with sufficient particularity, or it can come in the form of affidavits that demonstrate that it is possible for the plaintiff to recover more than the jurisdictional minimum.[27]

Defendants ignore the legal certainty test and the cases cited by Plaintiffs that apply that test.  Instead, Defendants assert that plaintiffs bear the burden of proving the amount in controversy by a preponderance of the evidence.  The flaw with this argument is that it references the standard that applies in removal jurisdiction cases,[28] not original jurisdiction cases like the one before the court.[29]  Where a defendant is invoking removal jurisdiction under 28 U.S.C. § 1441, courts conduct "a more thorough inquiry into the facts underpinning jurisdiction than the legal certainty test permits"—namely, the defendant must establish the jurisdictional minimum by a preponderance of the evidence.[30]  But, where the plaintiff is invoking the court's original

---

[26]*McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

[27]*See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("The district court must first examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount.  If it is not thus apparent, the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy."); 15-102 MOORE'S FEDERAL PRACTICE - CIVIL § 102.107 (3rd ed.).  *See also cf. Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

[28]Defendants do not rely on cases that involve original, diversity jurisdiction.  Instead, they rely on *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (removal jurisdiction); *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 955 (9th Cir. 2001) (removal jurisdiction); and *Yoder v. Assiniboine & Sioux Tribes of Fort Peck Indian Reservation, Mont.*, 339 F.2d 360, 362 (9th Cir. 1964) (federal question jurisdiction).

[29]*St. Paul Mercury*, 303 U.S. at 290 ("A different situation is presented in the case of a suit instituted in a state court and thence removed."); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("In diversity cases, where the amount in controversy is in doubt, the Supreme Court has drawn a sharp distinction between original jurisdiction and removal jurisdiction . . . .").

[30]*Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015).

jurisdiction under § 1332(a), the legal certainty test applies, not the "more searching inquiry" that applies in removal cases.[31]

Applying the legal certainty test to the case at hand, the court finds that it is not certain that Plaintiffs will recover less than the jurisdictional minimum. Kelly states in her declaration that without the source code "FIPCO has incurred substantial additional costs associated with unnecessary staff time to address maintenance, support and development issues for our clients."[32] She asserts that her employees have spent 4,897 hours addressing these unspecified issues, at a cost of about $127,000 dollars to the company.[33] For his part, Bruce states that without the source code ABS is "unable to ensure performance of its duties with regard to the software to its customers, including maintaining and securing the software, and providing software updates for law and regulation changes."[34] He states that about $130,000 of ABS's gross income from the Software "is in jeopardy" each year.

Defendants argue that Plaintiffs' declarations are vague and do not detail with precision the source or amount of Plaintiffs' damages. Even so, these declarations suffice under the legal certainty test. "'[T]he legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement.'"[35] Only the following three situations "'clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of

---

[31]*Id.*

[32]Doc. 28-1 at 6 ¶ 28.

[33]*Id.* at 6 ¶ 30.

[34]*Id.* at 61 ¶ 15.

[35]*Pachinger*, 802 F.2d at 364 (quoting 14A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3702, at 48-50 (2d ed.1985)).

damages was claimed merely to obtain federal court jurisdiction.'"[36] None of these situations exists here.

Plaintiffs' declarations explain why Plaintiffs believe they have suffered more than $75,000 in damages. The court's task is not to decide whether they will actually recover that amount, bur rather to determine whether it is a legal certainty they will not. Because there is no basis to conclude as much here, Defendants' Rule 12(b)(1) attacks will be denied.

**B.    Defendants' Rule 12(b)(6) Arguments**

    **1.    Rescission**

The parties agree that Plaintiffs' source code claims seek damages, not the rescission of any contract. Defendants argue that Plaintiffs cannot change their mind and later pursue rescission because a party cannot obtain both rescission and damages.[37] Although Defendants fashion this argument as arising under Rule 12(b)(6), they cite no authority in support of the proposition that a party may use a Rule 12(b)(6) motion to attack purely hypothetical claims. Because Defendants are seeking dismissal of non-existent claims, their argument fails.

    **2.    Count II**

Section 1.10(b) of the Operating Agreement states that LOS Global will convey the Software to eGlobal in its entirety.[38] Count II of the Complaint alleges that LOS Global is breaching its duty of good faith under the Operating Agreement by not conveying the source code to eGlobal.[39] At paragraph 48, Count II goes further, alleging that LOS Global is depriving Plaintiffs of the benefit of both the Operating

---

[36]*Id.*

[37]Doc. 23 at 13. *See Mahurin v. Schmeck*, 95 Ariz. 333, 342 (Ariz. 1964) ("A court cannot decree rescission and award damages concomitant thereto.").

[38]Doc. 23-1 at 16.

[39]*See* doc. 17 at 8 ¶ 44.

Agreement and the Licensing Agreements.[40] Defendants take issue to this reference to the Licensing Agreements because LOS Global is not a party to those agreements.

By not responding to Defendants' argument, Plaintiffs effectively concede that LOS Global owes no duties under the Licensing Agreements. To the extent that paragraph 48 claims otherwise, Defendants' motion to dismiss will be granted.

Defendants take their argument one step further in reply, where they argue that Count II should be dismissed in its entirety because LOS Global also owes no duties under the Operating Agreement with respect to the source code. "The phrase 'source code' is not mentioned anywhere in the Operating Agreement," Defendants point out.[41] This argument fails both because Defendants raise it for the first time in reply and because it misunderstands the implied covenant of good faith and fair dealing.[42] As its name suggests, this tort is based on implicit promises, not explicit ones. Thus, the relevant question is not whether a party has breached an express covenant in the contract; it is whether his actions have prevented the other parties to the contract from receiving the contract's benefits.[43] Whether LOS Global's refusal to turn over the source code to eGlobal has prevented the other two parties to the contract from receiving a benefit of the Operating Agreement is a question of fact inappropriate for resolution at the motion to dismiss stage.[44]

---

[40]*Id.* at 9 ¶ 48.

[41]Doc. 30 at 9.

[42]Defendants cite inapposite cases. *See Goodman v. Physical Res. Eng'g, Inc.*, 270 P.3d 852, 855 (Ariz. Ct. App. 2011) (addressing breach of an implied contract, not the implied covenant of good faith); *Best v. City of Phoenix*, No. 2 CA-CV 2014-0153, 2015 WL 1279268, at *4 n.12 (Ariz. Ct. App. Mar. 20, 2015) (addressing breach of contract); *Inland W. Avondale McDowell, L.L.C. v. Wattles*, No. CV-11-02277-PHX-PGR, 2013 WL 1222585, at *1 (D. Ariz. Mar. 25, 2013) (same).

[43]*See Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002).

[44]*See id.* at 31.

### 3. Count IV

The Arizona Declaratory Judgment Act, A.R.S. § 12-1832, provides in pertinent part that "[a]ny person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." In Count IV of the Complaint, Plaintiffs seek a declaratory judgment pursuant to A.R.S. § 12-1832 that they have the right to immediate possession of the source code under the Licensing Agreements.[45]

Defendants argue that Count IV is not justiciable because LOS Global is not a party to the License Agreements. They rely on *Riley v. Cochise Cty.*, where the court held that "in order to be entitled to relief, [a plaintiff] must have a legal, protectible interest, i.e., his pleading must present a state of facts showing he has a present legal right against the defendant with respect to which he may be entitled as a general rule to some consequential relief, immediate or prospective."[46] "When the defendant has no power to affect the plaintiff's rights, no controversy is presented."[47]

Defendants assume that LOS Global is unable to affect Plaintiffs' rights under the Licensing Agreements because it is not a party to those agreements. This argument misses the mark. What matters is not whether LOS Global is a party to the contracts but, rather, whether LOS Global has the power to affect Plaintiffs' contractual rights. If the License Agreements grant Plaintiffs the right to immediate possession of the source code, it follows that LOS Global's refusal to turn over the source code to

---

[45]*Id.* at 9 ¶ 59.

[46]455 P.2d 1005, 1009 (Ariz. Ct. App. 1969).

[47]*Id.* at 1010.

them affects their contractual rights.[48]  This is more than a mere difference of opinion.[49]  Count IV is justiciable.

Turning to the merits of Count IV, Defendants argue that the License Agreements do not give Plaintiffs the right to possess the source code because those agreements condition that right "upon the execution by eGlobal, ABS and FIPCO of a separate letter agreement setting forth the permissible terms for ABS's and FIPCO's use" of the code.[50]  Defendants argue that this right never accrued because LOS Global never consented to the letter agreements (§ 8.2.b of the Operating Agreement requires unanimous board consent for such agreements).[51]  In response, Plaintiffs argue that LOS Global effectively consented to the letter agreements when J. Michael executed the License Agreements, each of which incorporate by reference an Exhibit C containing the "form and content of the letter agreements."[52]  Defendants reply that, even if LOS Global consented to the form letter agreement at Exhibit C, the content of the actual letter agreement that Plaintiffs executed substantially deviates from the content of the Exhibit C letter agreement.[53]

Questions of fact preclude resolution of the question whether LOS Global consented to the letter agreements.  The parties do not dispute that LOS Global, as a member of eGlobal's board, approved the License Agreements in the manner

---

[48]See Yes on Prop 200 v. Napolitano, 215 Ariz. 458, 468 (Ariz. Ct. App. 2007) ("A controversy is not justiciable when a defendant has no power to deny the plaintiff's asserted interests.").

[49]See Moore v. Bolin, 220 P.2d 850, 851 (Ariz. 1950).

[50]Doc. 23 at 6.  See e.g., doc. 23-1 at 61 § 7 ("eGlobal Systems shall provide a copy of the source code for the Software . . . to ABS upon execution of this Agreement and the letter agreement set forth in Exhibit C.").

[51]See doc. 23-1 at 26-27 § 8.2.

[52]Doc. 28 at 7.

[53]Doc. 30 at 4.

contemplated by § 8.2.b of the Operating Agreement. Instead, they dispute whether the scope of this consent extends to letter agreements that are similar, but not identical, to the form letter agreement attached as Exhibit C to the Operating Agreement. Because the scope of LOS Global's consent cannot be discerned by reference to the four corners of the Complaint or any of the documents specifically mentioned in the Complaint,[54] this dispute cannot be resolved at the motion to dismiss stage.

### 4. Unjust Enrichment

"[U]njust enrichment provides a remedy when a party has received a benefit at another's expense and, in good conscience, the benefitted party should compensate the other."[55] Unjust enrichment claims require the plaintiff to show "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law."[56]

Plaintiffs' unjust enrichment claim alleges that Defendants were unjustly enriched, and they were damaged by the "improper actions of Defendants" described earlier in the Complaint. Defendants argue that this fails to state a claim under Rule 8(a) because "it is impossible to determine what actions of LOS Global the Plaintiffs claim were 'improper,' or what 'enrichment' LOS Global obtained as a result of these actions."[57]

At docket 9 the court ordered the parties to file a certification of conferral before they file a motion to dismiss indicating that they conferred to determine whether an

---

[54] *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned.").

[55] *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012).

[56] *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. App. 2011).

[57] Doc. 23 at 16.

amendment could cure a deficient pleading. The certification that defense counsel filed at docket 23-1 does not indicate that the parties conferred about whether an amendment would cure Defendants' confusion about Plaintiffs' unjust enrichment claim. It is likely that Defendants' Rule 8(a) concerns can be cured by amendment. Because defense counsel has not certified that the parties have conferred about this possibility, Defendants' motion will be denied.

### 5. Mediation

The Dispute Resolution Clause of the License Agreements provides that all disputes "arising out of or relating to" the License Agreements must be submitted to negotiation and, if that fails, non-binding mediation.[58] Although Defendants vigorously argue they are not parties to the License Agreements, Defendants nonetheless contend that they should be allowed to enforce the mediation clause of those agreements under the common law doctrine of equitable estoppel. Generally speaking, equitable estoppel precludes parties from "claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."[59]

Defendants' estoppel argument cites only one case: *Kingsley Capital Mgmt., LLC v. Sly*.[60] In *Kingsley* the district court considered whether a nonsignatory could enforce an arbitration clause in a third-party contract through estoppel. The court identified two tests that might apply, one based on the narrow federal common law approach and the other based on Kentucky law. The court did not reach the question whether federal or state law applied because it held that the nonsignatory did not meet the requirements of

---

[58] *See* doc. 23-1 at 71 § 17.11.

[59] *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (internal quotation omitted). *See also Schoneberger v. Oelze*, 96 P.3d 1078, 1081 n.5 (Ariz. Ct. App. 2004), *superseded by statute on other grounds by* 2008 Ariz. Sess. Laws, ch. 247, § 16 (2d Reg. Sess.).

[60] 820 F. Supp. 2d 1011, 1020 (D. Ariz. 2011).

either.  In a subsequent case, however, the Ninth Circuit clarified that state law estoppel principles apply.[61]

Defendants do not address any of the nuances of their equitable estoppel argument.  They do not acknowledge that state law applies, do not identify any legal tests that the court must apply,[62] and do not apply the facts of this case to the relevant test.  Because Defendants' conclusory argument fails to discuss the controlling legal authority, the court cannot grant their motion.[63]

## V.  CONCLUSION

Based on the preceding discussion, Defendants' motion to dismiss is granted in part and denied in part as follows: Plaintiffs' contention in Count II of the Complaint that LOS Global is liable for bad faith under the License Agreements fails to state a claim; in all other respects, Defendants' motion is denied.

DATED this 24th day of August 2016.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[61] *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).

[62] *See, e.g., Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Properties, Inc. v. Robson*, 294 P.3d 125, 135 (Ariz. Ct. App. 2012) (adopting the estoppel tests set out in *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798-99 (8th Cir. 2005) and *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 830–31 (N.D. Cal. 2007)).

[63] *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed.) ("[T]he burden is on the moving party to prove that no legally cognizable claim for relief exists.").